Good morning, and may it please this Court, and also Mr. Harrington, Government's Counsel, and also, for the record, Judge, I do have my intern seated to my left. She's from Gonzaga, and I appreciate this Court's willingness to let her sit at Council table. We're very glad to have you. Your Honor, we brought four issues to this Court's attention. The first was the District Court's denial of motions to continue, both pre-plea and then also post-plea. The second issue is whether or not the plea was knowingly and voluntarily entered when it was entered by the defendant. The third issue that we raise is the District Court's denial of Mr. Harpham's motion to withdraw his previously entered plea. And the last issue is in regard to the statute 18 U.S.C. 2325B and whether or not that statute was unconstitutionally vegged. Your Honor, to give a little bit of background here, this case starts January 17th of 2011. There was a bomb found, what the government alleges a bomb B, on the side of a parade route during the Luther King Day rally. Several months later, March 8th, there was an arrest made. Mr. Harpham was arrested. And then a month or so after that, there was a superseding indictment charged where there was four counts levied against Mr. Harpham. Counsel, you have limited time. Where are you going with all of this? Your Honor, I'm going with the background to show this. We don't need it. Judge Fletcher told you we've read all the documents. We know the background. In short, Your Honor, this case went from arraignment to plea in four and a half months. And so I want this Court to know and recognize that this was a very short time frame in which the defense was tasked to get ready, prepare for trial, and then the biggest issue and concern that presented itself was the late arriving discovery from the government. This discovery came after the cutoff date, the district court's cutoff date. And this discovery included IED test shots, which showed that this device would actually work. Before this late arriving discovery, the only thing that the government indicated was that it would probably work, not that it actually worked. And now the government, three weeks before trial, indicates that it will work. Because of that arriving discovery, Judge, the defense was then tasked with getting its own experts ready to, A, evaluate what these test shots were, look at the FBI's analysis, and then go to Quantico, Virginia, and do their own tests in impossibility. And that's what I'm getting at. It's this tight timeframe that the late arriving discovery, which put the defense in a position where it could not defend Mr. Harpham adequately. Who was the defense lawyer at the Rule 11 hearing? Mr. Pavin. Yeah, Mr. Roger Pavin. He was the, at that time, the acting federal defender for the Eastern District of Washington. A very capable man, but unfortunately, he was not able to secure a continuance. He requested that continuance from the district judge. The request was made because he needed additional time to secure an expert, his own expert, to look at those FBI reports, to look at those test shots, to make sure that that's evidence that was late arriving, and that the judge indicated the government could include in their trial-in-chief was what the government said it was. And so he requested some additional time to get his own expert on board, to review those materials, go to Quantico, do his own tests, to verify or possibly opine in the opposite that this indeed was not what the FBI claimed it was. Well, he didn't bring this up at all in the colloquy. I just read the colloquy again for the second time during the break, and there's not even a scintilla of a mention of anything like this. The colloquy is one of the most complete I've read in a long time. And, of course, then there's a waiver of the right to appeal. What you seem to be suggesting to me is that this is a Strickland case, meaning ineffective assistance of counsel. Judge, going back to the plea colloquy and looking at the rule in Brady, where it indicates that we've got to look at the whole picture here, Your Honor, not just to the colloquy. And that's what I'm pointing this court to, is the whole picture. This late arriving discovery that put the defense at a disadvantage. They were told that this late arriving discovery and the FBI's expert reports were going to be used against the defendants. At that time, they requested some additional time. You don't need to be a rocket scientist to know that a pound of black powder with a detonator in it and some shrapnel wrapped around it is a bomb or an explosive device. You don't need to be brilliant to figure that out. And, Your Honor, I guess at this point I would point this court to what ultimately the defense was able to receive from their expert, albeit it was after the plea. But, again, they needed time to get that expert on board to look at the information and send out their own report. But as you'll see in the record, and I believe it's right around ER 40 or so, is Dr. Whitehurst's report. And in that report, he tells us this is not a bomb. A bomb is self-containing. It's not a grenade. It's not lobbed. It's not a missile. It's an explosive device, isn't it? It would have to be under the definition that the government is using trying to convict Mr. Harpum that it is some other device. The actual language of the statute is similar device. And so they would have to maintain that this is a similar device, like Your Honor is talking about. You know, counsel, you're trying to relitigate the case. Let me just read you some language. An unconditional guilty plea waives all non-jurisdictional antecedent rulings and cures all antecedent constitutional defects. If this waiver is good, everything you're saying might help your client in a habeas on a strickling ineffective counsel claim. But you're looking straight into the mouth of an unconditional guilty plea. Judge, it's not the defense lawyer's fault. The defense lawyer was put on a short leash in a time frame that was impossible to successfully defend his client. You look at the timeline, Judge, and when the government gave over this evidence. Very late arriving. And then after the arrival of that information from the FBI and from the government, that's when the defense needed to look into what this information was. What was the sentence given to your client? Thirty-two years lifetime supervision. What was the defendant looking at on the basis of the indictment and all the charges? What was the maximum? Life. So he got a deal. Judge, looking at that deal, and I point the court to that. And so now you're trying to go back and expose your client to life. Do you understand that? Your Honor, looking at the pre-sentence report, and I direct the court to where that pre-sentence report points where the guideline range for count one would be. And that is half of what the defendant ultimately received. The issue here is attacking that statute. Count three and count four. Before the defense got their information from their expert, they did not have a way to attack count three and count four. Count four is wholly dependent upon count three, and count three is dependent upon that definition that I just talked about. I looked at the discussion, and I didn't see a clear request for a continuance that was denied. There was a lot of talk about that will not happen, but I didn't see at the end of that when the hearing ended there was an order for the FBI to do such and so. The FBI did it, but I don't see at that point a request for a continuance or any place thereafter for a continuance before trial. Point me to it, please. Judge, there was two continuances that were requested, both oral. The first one was in a pretrial conference. That was on 9-2. Where's that in the excerpt? Judge, I'll have to take a minute or two and get you the exact page, but I'll do that on my break, and I would reserve a couple minutes. And then the second one, Your Honor, is after the plea change, and that's on December 19th, right before the sentencing hearing. And that's when the defense requested some additional time for Mr. Whitehurst to finalize his report before the judge sentenced. And that's when the defense counsel proffered that we have an issue here, Judge. We want some more time. It looks like we have an attack on the statute. We have an attack on count three and four. Mind you that count four held a 30-year consecutive. That's the chip that the government was using to motivate Mr. Harpham and his defense lawyers in order to plead guilty. On this question of continuance, as I understand the timeline, the government performed tests and then was ordered to perform more tests, which should have been completed if performed by September 8th. But your client pled on September 7th before that was done. Am I missing something? I believe that is accurate, Your Honor. And the issue is that we've got these ongoing tests, and your client doesn't even want to wait for the completion of those tests that I gather were performed or ordered to be performed based upon the skepticism of the defense about the accuracy of the first tests. And I guess I would just point the Court to why the government nor the FBI invited defense counsel and their experts over to Quantico to do this together. That's what the district court got a little angry with the government. I believe it was at the pre-trial conference or sometime thereafter why they didn't do that together, because now it has screwed up his scheduling and he did, meaning Judge Quackenbush, the district court, he did grant the defense some additional time in order to get their expert on board and in a very short time frame order them out to Quantico to do these dual tests for the defense. But then the plea was entered before these tests were completed. Is that right? It was, Judge, before I believe the tests, Your Honor, were done before the plea change. That's at least my timeline. I see the outside date for completing them was the 8th, so you're saying that the tests were actually completed before the 7th, before the plea? They were, Judge. And I have in my notes the IED test shots were revealed August 19, 2011. And that was actually after the second continuance. So the Court did grant two continuances in this case. The first one was for a few months. The second one was for a week or two. And then the test shots came up. Yeah, but as I read this record, it looks to me as though what happens is the testing has gone far enough along that the defense, correctly or incorrectly, thinks, okay, more tests is not going to help my case. I mean, otherwise why plead right then? They did not know that the device would work as it was put together. Now the test shots show that the device would actually function as it was put together by Mr. Harpham. And so now you have an issue that the device would work. Before it was just a probably, now it is a yes. And now the defense is asked, take the FBI's word for it, don't do your own testing. And is it that later test that shows that it would work, the one that was supposed to be completed by September 8th? Yes, Judge. And did the defense specifically ask Judge Quackenbush, wait a minute, we don't trust that test, we want to perform our test, and he says, no, I won't postpone for that? First off, they tried to exclude those tests. I understand that. I'm asking a different question. Did the defense say, we don't trust that test, we want to perform our test, and we would like a continuance in order to perform it? Did they make that motion? I don't know for sure, Judge. I'll have to look in the record. Oh, you better know. I mean, if your argument is they were entitled to a delay, you better know, or you shouldn't know, you probably know standing right there. Well, at the pretrial conference, they did request additional time in order to, because of these tests, in order to recruit their own experts and get their own experts on board. They didn't have Dr. Whitehurst yet, as I read the record. And so they needed some additional time in order to recruit somebody that's knowledgeable in these types of devices. And did they specifically say to Judge Quackenbush, we need more time to perform our test because we don't trust the test performed by the government? As I recall, Judge, in reading the record and remembering the record, they first moved to exclude those tests, and then they requested their own expert on board in order to do their own testing. And they did request some additional time because of it, which was denied. Where's that? I can't find it. I read this twice, and I can't find anything close to that. Well, Judge, I'll have to look at both the, I believe it was on the pretrial conference. If not, it may have been before the 9-7 plea change. I'll have to look at the transcripts and my briefing on the issue. But, again, my recollection was that there was a motion for a second continuance, which was denied. Okay. You're down to about four minutes. Let's hear from the government, and we'll give you a chance to respond. And it may be that while the government is talking, you can find some of the material. Thank you, Judge. Thank you. Good morning, Your Honors. May it please the Court, my name is Joe Harrington. I'm an assistant U.S. attorney for the Eastern District of Washington at Spokane. And, Judge Trott, if you're looking at that record site, it's actually for the record page 250, which is Order Continuing the Trial Date. And the motion is to investigate continuance of the trial date, beginning at page 251. The basis for the defendant's motion for a trial continuance is not because they were unprepared or didn't have enough time or were going to elicit the absence of an expert. The reason they asked for a continuance was because there was a national Martin Luther King exhibit being unveiled in Washington, D.C., at or around the time of the August 22nd trial date. ER-252, I've got it. Thank you, Your Honor. Thirty to sixty days is requested in order to alleviate concerns regarding this effect, meaning that a holiday on the jury veneer. The defense motion follows that order in the record. There was no suggestion that the defense attorney should prepare the procedural file. There was no basis for a request for a continuance or another exposure. What I'd like to point out, Your Honors, is that, again, nowhere in the record that I'm aware of were the defense attorneys making any argument that they were unprepared to proceed to trial. This case was, as counsel pointed out, was on a, went from initial appearance to a trial date in September, four and a half months. I would point out, however, Your Honor, Your Honors, that the defendant was represented by not one but three able and competent defense attorneys. Senior Judge Quackenbush mentioned that several times during the record that's produced in this case. Not only was the federal defender himself, but also his two experienced assistant federal defenders involved in this case. They hotly litigated the matter. There were many motions filed during the summer, Dawbert motions, motions to suppress, some of which were successful. And there was no suggestion as we approached that trial date of August 22, 2011, that they were unprepared to proceed to trial. Now, what I'd like the Court to understand is this. There's reference to this late disclosed discovery provided by the United States. I think I need to put that in context for the Court. The Court ordered that all expert reports in this case were to be disclosed on June 27, 2011. That was the order entered by Senior Judge Quackenbush. Earlier that month, June 7, 2011, Defense Counsel's identified expert, Mr. Jerry Taylor, came to the FBI office, looked at the components of the bombs, took certain photographs, and did an analysis. So the government was waiting from that examination by the explosion expert on June 7, waiting until the 27th to get the expert report. What happened was the government continued to wait because the expert report wasn't disclosed. The government filed a motion, a second motion, to compel discovery, including the expert report. And that was filed on July 8, still waiting for the report. Now, at about two and a half weeks out from trial, August 4, 2011, the defense turns over their expert report to the United States. Now, again, this is months after the obligation to turn it over was ordered by the Court. And this was a mere two and a half weeks out from the then-scheduled trial. I would submit respectfully, Your Honors, that the government is not obligated to sit by and do nothing with an expert report that's been disclosed. And, in fact, the government didn't do nothing. The government took steps to respond to the opinions set forth in that report. And that was counsel and the Court were advised during the pretrial conference on August 12, not specifically but generally because a decision hadn't been completely made, that the government was intending to do and conduct more testing. And, in fact, within a week, well, within a week, the FBI had put together two demonstration shots of this improvised explosive device provided to the United States Attorney's Office, and that was provided to defense counsel the same day. That was August 19th of 2011. Now, respectfully, Your Honors, for the suggestion to be made that this is late disclosed discovery by the government, I take issue with. And that's because the government complied with its discovery obligations. The defense didn't. The defense did not comply with the June 27th obligation, didn't respond to the second motion to compel, and only provided the expert report late, I would point out, on August 4th of 2012. As it proceeded then, Judge Quackenbush was concerned about the effect that the Martin Luther King Ceremony back in Washington, D.C. may have had on the prospective jurors. So was the defense attorney. So the trial was then continued about 21, I believe it was 21 days until scheduled for September 12th. During that time, the court ordered and the government was prepared to allow the defense bomb expert to travel to Quantico to actually put together three more demonstration shots, and, as ordered by Senior Judge Quackenbush, three additional demonstration shots at the direction and the oversight of the defense bomb expert. The government was prepared to do that. Plans had been made. And it was then determined the defendant decided to enter a guilty plea to Counsel 1. What do you mean plans had been made? I read the colloquy there, but elaborate. Plans had been made. What were those plans? Your Honor, the bomb expert at Quantico for the FBI had been contacted. I was advised that they were out trying to find and to gather up more parts, parts meaning quarter-ounce fishing weights, the tube, more black powder, trying to recreate what they had demonstrated earlier in the demonstration shots because, of course, it did work and it exploded all the items, so they had to find new items. They were preparing additional tests. Correct, Your Honor. Yes. At what part was the defense supposed to have in the execution of the tests that they were preparing? The defense attorneys were not involved but the bomb expert, Jerry Taylor. Mr. Jerry Taylor was directed to go to Quantico, observe the FBI's construction of three additional devices, and then he was to direct the FBI on how to construct three more. Who entered that order? Judge Quackenbush did, Your Honor. One moment. That order is in the government's supplemental excerpt of the record at pages one through three. That's the order. That's a September 2 order. That's correct, Your Honor. All right. And that never happened because the defendant decided to plead guilty? That's correct, Judge Trott. Now, one other thing I'd like to put in context with the Court's indulgence is this. When this backpack bomb IED was found on the day of the Martin Luther King Jr. unity march in Spokane, the local bomb squad responded and they realized there was a bomb inside his backpack. They called in a remote robot that would use a water cannon to disrupt the device, which they did. The significance of that is that it did break up some of the items of this bomb, but all the components were there. In other words, it didn't explode. Thank goodness the bomb didn't explode. They got to it before it was detonated. But as a result, they had all the components. They had 128 quarter-ounce lead weights that were coated in anticoagulant rat poison. They had the 100 grams of black powder. They had the model rocket igniter. They had the power wiring train. They had the power sources, which were two 9-volt batteries. And they had the actual metal pipe that this bomb was constructed within. The significance of that is that the defense's bomb expert, Jerry Taylor, was able to look and construct and look and observe and analyze all the components of the bomb. And so I would submit to you respectfully that as we move forward in this case, after the plea was entered, which I would respectfully argue was both knowing and voluntary, that this new person came forward with a new what they're calling an expert opinion, this Mr. Whitehurst. Now, there's a couple of things I'd like to point out. One, Mr. Whitehurst never provided any Rule 16 expert disclosures. He provided a report. But it's uncertain exactly what his background is, what his ability is to render opinions. He just failed to comply with any Rule 16 disclosures. Second of all, and I would cite an unpublished decision, but it was cited by Senior Judge Quackenbush that Judge Trott had helped author, and that was the U.S. v. Joseph case. In that unpublished decision, the court recognized that a new opinion is not new evidence. And in that case, it was because the evidence was there all along. These bomb components were available to the defense since June 7th, when their bomb expert came and looked at the components and ultimately came up with his opinion. This new person post-plea who came up with a new opinion didn't change the facts. There's no, I would submit respectfully, no new evidence in this case to justify somehow that there's a fair and just reason to withdraw the defendant's pleas in this case. And finally, Your Honors, this person, or this Mr. Whitehurst, somehow likens this device in his report to a shotgun or a shotgun shell. Big one. Well, Your Honor, yes. And the interesting thing is, if you look at the entire record in this case, there's never a dispute that this was an explosive device with 100 grams of black powder and the way it was constructed with potential shrapnel that could have maimed, killed, and injured hundreds of people, if not thousands, in that Martin Luther King parade. You probably should stop at hundreds. Hundreds, yes. But the definition of a shotgun, you know, if you look at the definitional section of 232 actually cross-references what a firearm is, and that's cross-referenced, I've set this forth in my brief, to 18 U.S.C. 921-A, which is the definitional section of firearms and shotguns and destructive devices. A firearm is defined, but then the statute in Congress goes on further in section 921-A-4-B, and that's the definition of a destructive device. That's any type of a weapon, by whatever name known, which will expel a projectile through the use of an explosion, with a barrel, having a barrel bore more than one-half inch in diameter. And in this case, we're talking about a device with a three-inch bore. So I would submit respectfully that Mr. Whitehurst's opinion that this was a firearm doesn't fit the statutorial definitional section of 921-A, and clearly is some sort of a destructive device because it's got a barrel of more than one-half inch. And further, it's not a shotgun because it's defined here in 921-A. A shotgun means a weapon designed or redesigned or made intended to be fired from the shoulder. And certainly, the device that Mr. Harpum constructed was not a device that would be used to be fired from the shoulder. Finally, Your Honors, I think it's also important in this, in the context of this issue, to reemphasize that the defendant was not charged with actually committing the offense. He was charged with an attempt. And I would respectfully submit that if there's any question about whether this device bomb improvised explosive device doesn't meet the definition, there certainly is sufficient evidence to suggest that an attempt with substantial steps was clearly completed. What was the scheduled trial date? Your Honor? The change of plea hearing was September 7th. The plea was December 12th, Your Honor. Your Honor, I can give you the timeline. There were actually three trial dates. The first trial, and I know I may not be directly answering your question, but the first trial date was set for May 3rd. The second trial date was set for August 22nd. And the third trial date was set for September 12th. The defendant entered his plea, his pleas of guilty, on September 7th, which would have been a few days before trial. And the additional IED testing was to be performed by court order no later than September 8th? That's correct, Your Honor. All right. And that testing was not performed? It was not performed because plea negotiations began and the parties entered into a resolution in this case. That resolution, of course, I want to bring up, was conducted pursuant to what I would call a full, complete, and in my opinion exemplary Rule 11 colloquy between Senior Judge Quackenbush, the defendant, and his three defense attorneys. That colloquy was in connection with a written plea agreement with a very detailed factual recitation, also set forth the elements of the two crimes to which Kevin Harpin pled guilty. But I also note that there was a waiver of appeal, and the government has raised that in its appellate briefing and would request that the court at least consider that. Well, the only way to get out from under it would be showing the involuntariness of the plea. Correct, Your Honor. Okay. With that, if there's any further questions, I'd be happy and more than willing to respond. Other than that, the government would request that this Court deny the defendant's appeal and uphold Judge Quackenbush's decisions to not allow the defendant to withdraw his pleas because there was fair and just reasons based on abuse of discretion standard, and in all events, enforce the appellate waiver. Okay. Thank you very much. Thank you. Mr. Witte, you've saved some time. Thank you, Judge. And directly to Judge Trott's question as to where am I getting this continuance language, Your Honor, I'm getting it on page 222 of the excerpt of record. That is during the pretrial conference, and I would direct the Court first to line 11, where there is a discussion between defense counsel, Ms. Kim Dieter, and the district court regarding the late arriving discovery of the government. It goes back and forth for several pages, and then with the request by Ms. Dieter to have additional testing done and have their expert present, and then the language of the court. And that's exactly what was ordered by the court on September 2nd. I've got it right here. You've read it. Additional testing shall be performed no later than September 8th. He gave you everything you wanted on the additional testing. The issue, Your Honor, is on the bottom of page 223 and at the top of page 224, where the court and defense counsel start talking about delay, and the court indicates, quote, unquote, there is not going to be delay in the trial, period. Where's the motion for a continuance? There is none. Your Honor, the back and forth between defense and the court. Where is the motion for a continuance? There is none. There's a lot of chatter. And what comes out of that is that the court gives Mr. Taylor exactly what he wants. The court gives Ms. Dieter a very short timeline, and that short timeline unfortunately wasn't able to give the defense what it needed, i.e., retain the expert, have them go out to Quantico to look at these tests and confirm whether or not the FBI's analysis was correct. Later they were able to do that, Judge. Later they were able to look at the FBI's reports. And then they started poking holes in it. But remember this timeframe, and that's the issue in this case, is that short timeframe between when they get these test shots and when they're able to actually get an expert on board, look at them, and then render their report. In the plea colloquy, the court asked Mr. Harpum's questions. Did you, Honor, about January 17, place this improvised explosive device at the corner of Maine and Washington here in Spokane? Did you place it there? The defendant, yes. Did you construct this device yourself? Yes. How long had you spent constructing the device? It was a period of time, a month. My last question, because it's an element of the offense, did you place this device on January 17 along the parade route by reason of your actual or perceived race, color, or national Oregon bias? Defendant, yes. And, Your Honor, that plea is directed to count one, count three. What my concern is is the statutory definition that triggers count four, and that was the concern of defense counsel. They did not know whether or not that device would actually work. Now they get this discovery from the government. Looks like it's going to work. Let's see whether or not their test is accurate and whether or not the FBI's report holds water. Did Mr. Taylor go back to Quantico, as the court order suggests, to participate in these demonstrations? Not in the time frame, Judge. I don't believe he did. So later on he does his own with no FBI present? Later on they retained Mr. Whitehurst. Mr. Whitehurst, in his report, and I'd point the court to, I believe it's ER site 444, his report tells exactly what he looked at. In this short time frame, again, it was impossible to get that expert on board and over to Quantico in a timely fashion. Well, it sounds as though Mr. Taylor wasn't quite the expert, as it turned out, that they wanted, meaning he wasn't providing the information that they wanted, or at least the interpretation of the evidence that they wanted. Well, they'd had Taylor from early on. I mean, they just didn't like their expert. Well, Your Honor, they needed an expert as to what the test shots showed and the FBI's analysis to that. They were able to get Mr. Whitehurst, albeit late, but now that report actually tells us that the defense has a defense. And that's what we're hanging our hat on, Judge, is that although, be it late, we're looking at this very short time frame in which a defense team needed to get their job done. They weren't able to because they didn't have the proper tools. Got it. Okay. Thank you. Thank you very much. Thank both sides for your helpful arguments. The United States v. Hartman is now submitted for decision.
judges: Goodwin, Trott, Fletcher